# E. E. Murtland, Appellant, *v.* George Callihan.

*Actions—Assumpsit—Joint tenancy in oil wells—Act of May* 6, 1891, *P. L.* 41.

Under the Act of May 6, 1891, authorizing actions in assumpsit by or against joint owners alleging an interest in or operating any drilling, pumping or producing oil or gas wells, a joint tenant in such an oil well is not entitled to recover against his fellows for their share of the expense of pumping done by him against their consent.

To recover under this statute a contract, either express or implied, must be shown as the basis of the claim.

The proviso of this act that no joint owner shall be required to pay any share of the expenses of operations commenced and carried on without his authority or consent refers either to an utter cessation of all work by everybody or to the ceasing of the work of operating of some particular person.

Argued May 14, 1896. Appeal, No. 98, April T., 1896, by plaintiff, from judgment of C. P. Butler Co., Sept. T., 1895, No. 68, for defendant. Before RICE, P. J., WILLARD, WICK-HAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

This was an action of assumpsit by one cotenant of an oil well against one of his fellows to recover one eighth of the cost of operating the oil lease and pumping said well.

The facts, as stated in the opinion of the Superior Court, are as follows:

The plaintiff, E. E. Murtland, and five others owned, as tenants in common, an oil and gas leasehold, whereon were three producing oil wells. The wells required to be regularly pumped, and for several years prior to February, 1895, the plaintiff, under a contract with his cotenants, pumped the wells and furnished coal, etc., for the purpose, for the agreed compensation of $50.00 per month.

On January 19, 1895, the defendant and two more of the joint owners notified the plaintiff, in effect, that the contract, so far as they were concerned, should terminate on the last day of the same month, and that on and after February 1, 1895, they would furnish a man to do their share of the work at the wells. It is conceded that pursuant to this notice, and at the time appointed, they did send a competent man to represent them, but the plaintiff ordered him away and would not permit him to work or stay on the premises.

The plaintiff went on for five months pumping and caring for the wells, as before, and now seeks to recover through this action what he alleges to be the defendant's proportionate share of the expense.

The court below, GREER, P. J., charged the jury as follows:

We direct you to render a verdict for the defendants in each case, and refuse all the plaintiff's points. [5]

### PLAINTIFF'S POINTS.

The court is respectfully requested to instruct the jury:

1. The act of 1891 makes each joint owner and tenant in common liable for his pro rata share of all expenses incurred in

342    MURTLAND, Appellant, *v.* CALLIHAN.

Charge of Court—Opinion of the ·Court.    [2 Super. Ct.

carrying on operations for oil and gas by drilling and pumping for oil and gas.    *Answer:* Refused. [1]

2. To relieve such joint owner or tenant in common from his pro rata share of expenses incurred in carrying on operations for oil or gas, as stated in the preceding paragraph, his objection must be not to the individuals who perform the labor, but to avail himself of the benefit of the proviso of the 2d section of said act of 1891 he must object to or refuse to authorize or consent to carrying on such operations entirely.    *Answer:* Refused. [2]

3. If the jury find that operations were carried on with the authority or consent of the defendant, he is liable for his pro rata of said expenses in this suit, and the verdict must be for the plaintiff.    *Answer:* Refused. [3]

4. That the written notice of defendant to the plaintiff shows that the defendant was willing to continue operations, and proposed to continue pumping by furnishing another person.    This notice is not to cease operations entirely but to substitute another pumper for the plaintiff.    This is not enough to relieve him, and the plaintiff must recover.    *Answer:* Refused. [4]

*Errors assigned* were, (1–4) answers to plaintiff's points; (5) charge of court.

*W. A. Forquer*, of *Forquer & McBride*, and *J. M. Thompson*, of *Thompson & Son*, for appellants.

*S. F. Bowser*, with him *A. L. Bowser* and *Lev. McQuistion*, for appellee.

OPINION BY WICKHAM, J., July 16, 1896 (after stating the facts as above) :

As the plaintiff at the trial was unable to show any contract, express or implied, on the part of the defendant to compensate him, and indeed, was compelled to admit that what he did in the defendant's behalf was in the face of the latter's protest, the case unless aided by the statute hereafter to be considered was clearly governed by the decision in Thompson v. Newton, 7 Atlantic Reporter, 64, where it was held that one cotenant who pumps an oil well cannot recover wages or compensation from another who has not employed him.

But the plaintiff contends that he is entitled to recover under the act of May 6, 1891, P. L. 41, which provides as follows:

"Section 1. Be it enacted, etc., That from and after the passage of this act, any person or persons performing labor of any kind whatever, or furnishing materials for, upon or about any drilling, pumping or producing oil or gas well, shall have the right to bring suit in assumpsit against any joint owner, joint tenant or tenant in common holding an interest in and operating such drilling, pumping or producing oil or gas well, to recover from such joint owner, joint tenant or tenant in common the pro rata share due and owing by such joint owner, joint tenant or tenant in common for any labor done, or materials furnished in, upon or about such drilling, pumping or producing oil or gas well, and the interest of such joint owner, joint tenant or tenant in common shall be subject to levy and sale upon any execution issued to enforce collection of any claim under this act, after judgment obtained by due process of law.

"Section 2. Any joint owner, joint tenant or tenant in common paying the pro rata share of the necessary expenses of any drilling, producing or pumping oil or gas well for any other joint owner, joint tenant or tenant in common holding an interest in and operating such drilling, pumping or producing oil or gas well, shall have or possess all the rights of action, as provided in the first section of this act, to the same extent as is given hereby to the person or persons performing the said labor or furnishing such materials:

"Provided, That no joint owner, joint tenant or tenant in common shall be required by this act to pay any share of the expenses of operations commenced and carried on without his authority or consent."

It will be noticed that with the exception of what is contained in the proviso, the act is silent as to the need of any contract relation, direct or indirect, to sustain a claim for compensation for work or materials furnished in or about the drilling or pumping of a well. The construction placed on the proviso by the plaintiff, if adopted, would give any person, stranger or co-owner, who could get and hold possession of an oil well which needed pumping the right to compel his cotenants or the real owner, as the case may be, to pay him wages for operating it, or accept the sometimes ruinous alternative of

shutting in the well, that is, forbidding "operations" altogether. Thus if A and B own an oil leasehold, with producing wells thereon, in common, and B who perhaps has only a one thirtieth interest or less, happens to be in actual possession, he may, regardless of the wishes and protests of A create a profitable place for himself by pumping the wells on the property. The only way wherein A could save himself from personal liability to one whom he had never employed and perhaps, for good reasons, would never think of hiring for any purpose, would be to practically destroy his property by having pumping discontinued entirely. Of course he might proceed to have a legal partition, or valuation and sale, and remain liable for the wages of his cotenant until the proceedings terminated. Even a receiver could not be appointed in such a case, as it would be an interference with B's rights. In the present case, accepting the plaintiff's theory, if the defendant or some one or more of the other cotenants, by force or stealth, were to secure and hold possession of the wells, he or they could fasten a liability on the plaintiffs and the others out of possession for daily or weekly or monthly wages, just as they might see fit to claim. Whether or not a co-owner would receive wages or pay them, be employer or employee, would depend upon who was in the saddle.

We are satisfied that the act is easily capable of a construction that will avoid such extraordinary results, and therefore need not discuss the question of its constitutionality, if the plaintiff's interpretation were adopted. The word "operations" in the proviso is not to receive the limited meaning claimed for it by the plaintiff. It may mean an utter cessation of all work by everybody or it may, as in the present case, refer to the work or operating of some particular person. The defendant had an undoubted right to withdraw his consent to the plaintiff's "operations" in his behalf and to offer to do his share of the work in person or by proxy. When he did this, the plaintiff had no further right to hold him to a personal liability and pursue him with a common law action. To recover under the statute, a contract, either express or implied, must be shown as the basis of the claim. The legislature never intended to create contracts between parties whose minds are not at least impliedly agreed, or to force one man, against his express dissent, to buy from or

hire another, even although he may in some way be benefited by the latter's services or goods.

The court below was clearly right in directing the jury to find for the defendant.

The judgment is affirmed.